Filed Dec. 9, 1890.

---

No 14,601.

EDGERTON v. THE HUNTINGTON SCHOOL TOWNSHIP.

SCHOOL LANDS.—*Not Subject to Assessments for Construction of Drains.*—The Congressional township lands in this State are not subject to assessments in aid of the construction of public ditches or drains.

From the Allen Circuit Court.

*R. C. Bell, S. R. Morris* and *J. K. Edgerton,* for appellant.

*J. Morris, J. M. Barrett, L. P. Milligan* and *O. W. Whitelock,* for appellee.

COFFEY, J.—This was an action instituted by the appellee against the appellant and others, in the Allen Circuit Court, to enjoin the collection of an assessment made against the land described in the complaint, to pay for the construction of a public ditch. The land is congressional township land. In the construction of the ditch certain assessments were made against the land to aid in the same. Such assessments have been placed upon the tax duplicate of Allen county to be collected as other taxes.

The defendant John B. Nizer is the auditor of the county, John Dalman is the treasurer, and the appellant Edgerton is the owner and holder of the assessments.

The appellant is threatening to collect the assessments

by advertisement and sale of land as delinquent taxes are collected. The only question in the case for decision relates to' the liability of the congressional township land to assessments in aid of the construction of a public ditch.

Section 4305, R. S. 1881, found in the act prescribing the mode of constructing public ditches, provides that " It shall be the duty of the county surveyor, on being notified by any contractor that his job is completed, to inspect the same ; and if he find that it is completed according to contract, he shall accept it, and give to the contractor a certificate of acceptance, stating that said job, share, or allotment is completed according to the specifications of said ditch. And if any share or allotment has been sold to a person not the owner of the land assessed therefor, he shall, in addition, state the amount due the contractor for constructing the same from the owner of the said land ; which certificate shall be a lien upon the land assessed for such share or allotment, and shall be due and payable immediately by the owner of the land ; and such certificate, if not paid on demand, shall draw interest until paid. * * And when the county surveyor accepts it, and issues his certificate of acceptance, he shall file with the county auditor a copy thereof; whereupon said auditor shall charge the amount mentioned in said certificate on the tax duplicate against the land assessed with such allotment, to be collected as other taxes are collected, together with six per cent. for the holder of the certificate after the same becomes delinquent ; and when collected, it shall be paid to the person holding the certificate, on an order of the auditor."

When a statute creates a new right, and prescribes a mode of enforcing it, that mode must be pursued to the exclusion of all other remedies. This is a well known rule, and under it this court held in the case of Storms v. Stevens, 104 Ind. 46, that a ditch assessment could be collected in no other mode than that prescribed by the above statute.

If, therefore, the assessments against the land described in

the complaint constitute a lien thereon, such lien is to be enforced by an advertisement and sale of the land for such sum as it will bring at public auction, as other lands are sold for delinquent taxes.

Can the Congressional township land be sold in that mode and for that purpose ?

A proper solution of the question renders necessary an inquiry into the history of these lands.

An act of Congress, passed on the 19th day of April, 1816, to enable the people of Indiana Territory to form a Constitution, etc., contained a grant or reservation to the inhabitants of each township for the use of schools, the sixteenth section of land in such township, and where such section had been sold, granted or disposed of, other land equivalent thereto and most contiguous to such section sixteen.

By another act of Congress, passed in the year 1827, the Legislature of the State of Indiana was granted permission to sell and convey, in fee simple, any or all the lands in the State reserved or granted for school purposes, but it was expressly provided in that act that the proceeds of such sales should be invested in some productive fund which should be forever applied, under the direction of the Legislature, for the use and support of schools within the several townships for which they were originally reserved and set apart, and for no other purpose whatever. It has sometimes been asserted that it was the intention at the time these lands were reserved that they should never be sold, but that they should be leased, and the rents and profits applied to school purposes. If such was the original purpose it has long since been abandoned, but the purpose to retain the proceeds arising from the sale of such land, is made to appear beyond question. *State* v. *Springfield Township, etc.,* 6 Ind. 83.

Section 2, article 8, of our Constitution, provides that the common school fund shall consist in part of the Congressional township fund, and the lands belonging thereto.

Section 3 provides "That the principal of the common

school fund shall remain a perpetual fund, which may be increased, but shall never be diminished; and the income thereof shall be inviolably appropriated to the support of common schools, and to no other purpose whatever."

It will thus be seen that these lands came to us as a sacred trust, to be applied exclusively to school purposes, and that the people, by their fundamental law, have placed it beyond the power of even the Legislature of the State to make any provision by which the principal of the funds arising from such lands shall be diminished.

The State has no power to tax such lands, for if it were permitted to do so, it could tax them out of existence, and divert them to the use of the State in the payment of ordinary expenses. So, if they could be assessed for local improvements and exposed to sale at public auction, and sold to the highest bidder, they might be totally absorbed and diverted from the common school fund to a purpose never contemplated when they were reserved.

The argument that the lands are benefited to an amount equal to the assessments does not meet the question, for while it is true in theory, and is, perhaps, true in fact, in many cases, that such lands are benefited by public improvements, it does not follow that when exposed to sale for the payment of such assessments, some person will bid enough to cover the enhanced value of the land.

The case of *People, ex rel.,* v. *Trustees of Schools, etc.,* 118 Ill. 52, seems to be in point. That case involved the right to assess the Congressional township land reserved to the State of Illinois for school purposes, to aid in the construction of a public ditch. In that case the Supreme Court of Illinois, in speaking of this land, says: " It should not be exposed to the danger of being improved away by being made to pay for supposed benefits conferred upon it by improvements."

It seems to us plain, from a careful consideration of the provisions of the statutes upon the subject of public ditches

and drains, that it was the intention of the Legislature that assessments should be made against such lands only as were subject to taxation.

There are many provisions in these acts which could not be enforced upon any other construction. In our opinion the Congressional township lands in this State are not subject to assessments in aid of the construction of public ditches or drains.

Judgment affirmed.

