SOUTHERN DRAINAGE DISTRICT AND J. P. CONRAD, L. T. HIGHLEYMAN AND F. H. SIEGEL, CONSTITUTING AND COMPOSING THE BOARD OF SUPERVISORS FOR THE SOUTHERN DRAINAGE DISTRICT, AND JOHN W. EDWARDS, INTERVENOR, *Appellants,* v. THE STATE OF FLORIDA, AND JOHN W. MARTIN, AS GOVERNOR; H. CLAY CRAWFORD, AS SECRETARY OF STATE; J. B. JOHNSON, AS ATTORNEY-GENERAL; J. C. LUNING, AS STATE TREASURER; W. S. CAWTHON, AS STATE SUPERINTENDENT OF PUBLIC INSTRUCTION, CONSTITUTING AND COMPOSING THE STATE BOARD OF EDUCATION OF THE STATE OF FLORIDA, *Appellees.*

Opinion Filed April 1, 1927.

1. Under the provisions of Section 602, par. 1, and Section 3798, Revised General Statutes of Florida, the possession, charge, oversight, management and sale of school lands in Florida, is delegated to the State Board of Education of Florida; it, therefore, necessarily follows that this body is the proper authority, under the law, to institute, for the State, suits in which the title to school lands is involved.

2. The State of Florida cannot be sued in the Courts of this State, without its consent given by general law, as provided in Section 22, Article 3 of the Constitution of Florida.

3. "The immunity of the State from suit is absolute and unqualified, and the Constitutional provision securing it is not to be so construed as to place the State within the process of the Court." Hampton v. State Board of Education, 90 Fla. 88, 105 South. Rep. 323.

4. A proceeding brought under the provisions of Section 20, Chapter 7599, Laws of Florida, Special Acts of the Legislature of Florida, 1917, against lands in the Southern Drainage District of Florida owned by the State for school purposes, is an action or suit against the State of Florida.

5. Even if there were a provision in Chapter 7599, Laws of Florida, Special Acts, 1917, authorizing or consenting that the State be made a party defendant to a proceeding brought for the foreclosure of alleged drainage tax lien, upon lands in the Southern Drainage District of Florida, owned and held by it for school purposes, such a provision would be invalid, for the reason that Chapter 7599, Laws of Florida, is a special law.

6. There being no valid law giving the Southern Drainage District of Florida authority to sue the State for the foreclosure of an alleged drainage tax lien upon real estate granted it by Congress for school purposes, or to make the State a party defendant to such a suit, a final decree of foreclosure of such alleged drainage tax lien on the property, described in the bill of complaint as school lands, is null and void, as is also the tax deed executed by the Court Commissioner under and by virtue thereof.

7. Section 20, Chapter 7599, Laws of Florida, Special Acts of the Legislature of Florida, 1917, in so far as it might be interpreted as authorizing a suit against real estate owned by the State, is null, void and of no effect, it being contrary to and in conflict with Section 22, Article 3 of the Constitution of Florida.

8. Sections 14 and 20 of Chapter 7599, Laws of Florida, Special Acts of the Legislature, 1917, in so far as they provide for assessing, levying and collecting by sale or otherwise, drain-

age tax upon lands granted by the Act of Congress, March 3, 1845, to, and held by, the State of Florida for school purposes, are null, void and of no effect, they being contrary to and in conflict with Sections 4 and 5, Article 12 of the Constitution of Florida.

9. For the reasons stated in the foregoing headnote, a final decree foreclosing an alleged lien for drainage tax, assessed and levied under the provisions of Section 14 of Chapter 7599, Laws of Florida, against lands granted by the Act of Congress, March 3, 1845, to the State of Florida, and held by it for school purposes, as also the sale of the lands under such final decree and the tax deeds executed therefor, under the provisions of Section 20, Chapter 7599, Laws of Florida, are null, void and of no effect.

10. After the enactment of Chapter 8907, Laws of Florida, Special Acts of the Legislature, 1921, amending Chapter 7599, Laws of Florida, there was no semblance of authority to levy a drainage tax on lands granted to and held by the State for school purposes; therefore, any levy of a drainage tax against lands held by the State for school purposes, or tax deeds executed for such land upon sale for delinquent drainage tax after the provisions of Chapter 8907 became operative, were null and void, not only upon the constitutional grounds set forth in the eighth headnote, but also because there was no longer a law authorizing a drainage tax upon school land.

An Appeal from the Circuit Court for Dade County; H. F. Atkinson, Judge.

Affirmed.

*Gilbert C. Robinson* and *Burdine & Barco,* for Appellants;

*J. B. Johnson,* Attorney General, and *H. E. Carter,* Assistant, for Appellees.

CAMPBELL, Circuit Judge.—On February 9, 1926, the appellees, as complainants in the Court below, filed a bill of complaint against the appellants, as respondents, wherein the complainants, as and constituting the State Board of Education of the State of Florida, sought to have the title of the State of Florida to certain lands, therein described as Section 16, Township 54 South, Range 38 East, quieted against certain alleged clouds, the alleged clouds consisting of a final decree of foreclosure of a tax lien for drainage taxes on the land, and also certain tax deeds on said lands, issued to the Southern Drainage District, for delinquent drainage taxes on the same for different years.

The bill of complaint alleges that the land described therein was, under the provisions of the Act of the Congress of the United States of America, March 3, 1845, granted to the State of Florida for school purposes. It is further alleged that the State of Florida never parted with the title to the said land; that under Section 602, paragraph 1, Revised General Statutes of Florida, the State Board of Education of Florida is directed and empowered to obtain possession of, take charge, oversight and management of all lands granted to the State for educational purposes; that the said land is wild, uncultivated, unimproved and unoccupied.

The alleged clouds upon the State's title are fully set forth in the following quoted allegations of the bill of complaint, to-wit:

"That the defendant, Southern Drainage District, claims and asserts an interest in and title to the hereinabove described lands under and by virtue of the hereinafter mentioned final decree of foreclosure and tax deeds against and to said above described lands, to-wit: The final decree of foreclosure rendered and entered in the Circuit Court of the Eleventh Judicial Circuit of Florida, in Chancery,

dated the 13th day of December, 1919, in the suit by said Southern Drainage District under the provisions of Chapter 7599, Special Acts of the Legislature of 1917, against said above described land to enforce an alleged delinquent tax levied against said above described land by said Southern Drainage District, the final decree being recorded among the public records of Dade County, Florida, in —— —— on page ——; the tax deed to the hereinabove described land from R. B. McLendon, Tax Collector for Dade County, Florida, to Southern Drainage District, dated March 24, 1921, and filed for record April 24, 1925, and recorded among the public records of Dade County, Florida, in Deed Book 585, on page 81; the tax deed to the hereinabove described land from J. R. B. Clemons, Court Commissioner of the Eleventh Judicial Circuit of Florida, to Southern Drainage District, dated March 31st, 1922, and filed for record April 23, 1925, and recorded among the Public Records of Dade County, Florida, in Deed Book 585, on page 83; the tax deed to the hereinabove described land from J. R. B. Clemons, Court Commissioner of the Eleventh Judicial Circuit of Florida, to Southern Drainage District, dated August 28, 1923, and filed for record April 23, 1925, and recorded among the public records of Dade County, Florida, in Deed Book 585, on page 85; the tax deed to the hereinabove described land from J. R. B. Clemons, Court Commissioner of the Eleventh Judical Circuit of Florida, to Southern Drainage District, dated March 18th, 1924, and filed for record April 23, 1925, and recorded among the public records of Dade County, Florida, in Deed Book 585, on page 79; the tax deed to the hereinabove described land from J. R. B. Clemons, Court Commissioner of the Eleventh Judicial Circuit of Florida, to Southern Drainage District, dated March 20, 1924, and filed for record April 23, 1925, and recorded among the

public records of Dade County, Florida, in Deed Book 585, on page 89.

"The said final decree was rendered and said tax deeds executed under the provisions of Chapter 7599, Special Laws of Florida, Acts of 1917, and acts supplemental thereto and amendatory thereof, wherein and whereby it was attempted to authorize the defendants to levy, assess and collect taxes upon each acre of land within said Southern Drainage District, including the land hereinabove described, and wherein it was attempted to make such tax so levied and assessed a lien upon said land from the date of the assessment thereof and to authorize the foreclosure thereof.

"That the said final decree hereinabove mentioned and referred to was and is unauthorized and is null, void and of no effect, first, because Chapter 7599, Laws of Florida, Special Acts of the Legislature of 1917, and Chapter 7761, Laws of Florida, Special Acts of the Legislature of 1918, in so far as the same attempted to authorize the levy and assesssment of taxes upon the said land hereinabove described, the collection of which was attempted to be enforced by said final decree, was and is null, void and of no effect in that such provisions are contrary to and in conflict with the provisions of Sections 4 and 5 of Article 12 of the Constitution of the State of Florida; and secondly, because the suit in which said final decree was rendered and entered was in effect a suit against the State of Florida and was therefore unauthorized by law, and in violation of Section 22, Article 3 of the Constitution of the State of Florida, and of Section 12 of the Declaration of Rights. :

"That all of said tax deeds to the said hereinabove described land issued under Chapter 7599, Special Laws of Florida, Acts of 1917, are null, void and of no effect, and

in violation of Section 12 of the Declaration of Rights of the Constitution of Florida.

"That all of said tax deeds to the said hereinabove described land issued under Chapter 7761, Special Laws of Florida, Acts of 1918, are null, void and of no effect under and by virtue of the provisions of Section 2 of Chapter 8906, Special Laws of Florida, Acts of 1921.

"That all of said tax deeds to the said hereinabove described land issued under Chapter 7599, Special Laws of Florida, Acts of 1917, as amended by Chapter 8907, Special Laws of Florida, Acts of 1921, are null, void and of no effect because said law, in so far as the same attempts to authorize the assessment and collection of a tax upon said land is null, void and of no effect, and to that extent is contrary to and in conflict with the provisions of Section 4 and Section 5 of Article 12 of the Constitution of the State of Florida.

"That the said land is owned by the State of Florida and held by the State Board of Education of the State of Florida as a part of the school fund of the State of Florida, and is not subject to taxation.

"That the defendants were heretofore at all times, and now are, without authority of law to levy and assess any tax of any kind upon said above described land, and that these complainants are and ever have been without any authority of law to pay any tax levied or assessed against said land.

"That the only moneys or funds in the hands, possession or control of the State Board of Education of Florida are the funds constituting the principal of the State School Fund, together with the interest arising from deposits and investments of the principal of the said State School Fund, which said fund can only be expended as is directed in

Sections 4 and 5 of Article 12 of the Constitution of the State of Florida.

"That the provisions of said Chapters 7599, 7761 and 8907, Laws of Florida, in so far as they attempt to authorize the levy, assessment and collection of taxes upon the said hereinabove described land are null, void and of no effect because such provisions are unreasonable and unconscionable in that it is attempted thereby to require the State Board of Education to expend a part of the permanent school fund, or part of the interest derived from the State school fund, for a purpose and in a manner prohibited by Sections 4 and 5 of Article 12 of the Constitution of the State of Florida.

"That the provisions of said Chapter 7599, 7761 and 8907, Laws of Florida, in so far as they attempt to authorize and require the levy, assessment and collection of a tax upon said land hereinabove described are null, void and of no effect in this: That the said provisions attempted to authorize and require the levy, assessment and collection of a tax upon property held by the State Board of Education as a part of the State school fund without providing for appropriation of funds with which to pay same.

"That therefore the said final decree and each and every of said tax deeds hereinabove mentioned and referred to are all and severally null, void and of no effect, and constitute a cloud upon the title of the State of Florida in and to said described land, and should be decreed by this Honorable Court to be null, void and of no effect and cancelled as against the title of the State of Florida in and to said land, and the title of the State of Florida in and to said land should be quieted and approved in it; that any interest, right or title claimed or asserted by the defendant, any, all or either of them in or to said described

land by reason of any or all of said final decrees or tax deeds, or otherwise, is subordinate to the title of the State of Florida in and to said land, and the same should be decreed to be null, void and of no effect as against the right, title, interest and claim of your orators therein, and the title of the State of Florida in and to said land should be confirmed, quieted and approved in it.

"That the defendants herein, and each and every of them who claim or demand any right, title, interest or possession of, in or to said described land adverse to the title and claim of your orators in and thereto, should be on the final hearing of this cause perpetually enjoined and restrained from claiming or asserting any right, title, interest or right of possession in and to said land, or bringing any action at law or suits in equity of any kind in any of the courts of the State of Florida to assert or recover any right, title or interest therein or possession thereof."

On April 5, 1926, the respondents filed two demurrers to the bill of complaint, one of which they designated as a "special demurrer" and the other as a "general demurrer."

On July 2, 1926, one John W. Edwards, was, upon petition, granted leave to intervene as a grantee in a conveyance from grantees of Southern Drainage District. The intervenor was also permitted to adopt as his demurrers those that had already been filed by the other respondents.

On the same day, i. e., July 2, 1926, the Chancellor rendered his decree overruling each of the demurrers. This appeal is taken from such interlocutory order or decree.

Two errors are set forth in the assignment of errors filed in this Court. They are, however, practically the same, and may be briefly summarized in one, viz.: The Court below erred in rendering and entering its interlocu-

tory order or decree overruling the special and general demurrers to the bill of complaint.

From the allegations of the bill of complaint quoted above, it appears that the validity of the final decree foreclosing the drainage tax lien upon the land involved, as also the validity of the alleged tax deeds executed by the Court Commissioner and the Tax Collector, are attacked upon the following grounds, to wit.: That Chapter 7599, Laws of Florida, Special Acts of the Legislature of Florida, 1917, and Chapter 7761, Laws of Florida, Special Acts of the Legislature of Florida, 1918, in so far as each attempt to levy and assess drainage taxes on the lands described, are null, void and of no effect, in that they are in conflict with the provisions of Sections 4 and 5 of Article 12 of the Constitution of the State of Florida, and of Section 12 of the Declaration of Rights.

It is further contended that such of the alleged tax deeds as were issued under Chapter 7761, Laws of Florida, Special Acts of the Legislature, 1918, are null and void under the provisions of Section 2, Chapter 8906, Special Acts of the Legislature of Florida, 1921.

An examination of the two demurrers reveals that they are, to all intents and purposes, the same. They seem to have been considered by the court below as being the same, and also as general demurrers. We think the court below very properly considered them in this way.

There are many grounds in the demurrers, most of which are similar, but we think the various grounds of demurrer may be briefly epitomized as follows:

1.  That it appears from the face of the bill of complaint that the complainants have no authority to bring suit.

2.  That there is no equity in the bill of complaint.

3.  That it is not made to appear from the allegations

682        SUPREME COURT OF FLORIDA.

Sou. Drainage District et al. v. State of Florida et al.—Opinion of Court.

of the bill of complaint that the suit, in which the final decree of foreclosure of drainage tax lien on the land described was rendered, was a suit against the State.

4. That the action provided for in Chapter 7599, Laws of Florida, and Acts amendatory thereof, is not a suit *in personam*, but a suit *in rem*, and no irregularity is charged in bringing the suit.

5. That it is not made to appear from the allegations of the bill of complaint that Chapter 7599, Laws of Florida, Special Acts of 1917, and Chapter 7761, Laws of Florida, Special Acts of 1918, and Chapter 8907, Laws of Florida, Special Acts of 1921, in so far as they relate to the levy and assessment of drainage taxes on the land described in the bill, are null and void and contrary to and in conflict with Sections 4 and 5, Article 12 of the Constitution of the State of Florida, or of Section 12 of the Declaration of Rights.

6. That the complainants fail to offer to do equity.

7. That the complainants have been guilty of laches.

The contention of the appellants that the State Board of Education was not the proper party to bring this suit, is untenable.

While the title to the lands granted by Congress to the State for school purposes is in the State, yet there must be some official or board, delegated with the power to act for the State in the management of such property and in the protection of its title thereto.

The possession, charge, oversight and management of lands granted to the State for educational purposes have been delegated to the Board of Education of Florida. See Sec. 602, par. 1, Rev. Gen. Stats. of Fla.

Under Section 3798, Revised General Statutes of Florida, the title to all lands granted and held by the State of Florida for educational purposes, shall be conveyed by

VOL. 93, JANUARY TERM, 1927.        683

Sou. Drainage District et al. v. State of Florida et al.—Opinion of Court.

deed, executed by the members of the State Board of Education of Florida.

The possession, charge, oversight, management and sale of school lands in Florida having been delegated to the State Board of Education of Florida, it necessarily follows that this body is the proper authority under the law, to institute suits in which the title to school lands is involved.

We shall next take up for consideration the sufficiency of the allegations of the bill of complaint relative to the conflict of Section 20, Chapter 7599, Special Acts of the Legislature of Florida, with Section 22, Article 3 of the Constitution of Florida.

The bill alleges that the final decree of foreclosure of drainage tax lien on the property involved was a suit against the State of Florida, which was not authorized under the constitution and laws of the State of Florida.

Was such an action under Section 20, Chapter 7599, a suit against the State?

It will be seen from Section 14, Chapter 7599, Laws of Florida, Special Acts of the Legislature, 1917, that it provides as follows: ''All lands in said district belonging to the State shall be assessed to, and the taxes thereon shall be paid by the State out of funds on hand or which may hereafter be obtained, derived from the sale of lands belonging to the State or otherwise'' etc.

It is provided in Section 20 of Chapter 7599, *supra*, that the suit for foreclosing drainage tax liens upon all lands located in Southern Drainage District, shall be instituted in the circuit court and shall be brought in the corporate name of the district, by its attorneys, against the land or lands on which such drainage tax has not been paid. It provides further for the *venue* of such suits, and for the publication of notice of the pending of suit, requiring any

one interested in the lands, or any part thereof, to appear on or before the first rule day of the court after this notice has been published four weeks, and make defense to said suit, etc.

It then provides that the pleadings, process, proceedings, practice and sale arising under the Act, except as therein otherwise provided, be the same as in actions for the enforcement of other liens or mortgages upon real estate.

It is contended by the appellants that a suit under Section 20, Chapter 7599 is against the land in the Southern Drainage District, and is an action *in rem*, and that therefore the proceeding brought in the Circuit Court of the Eleventh Judicial Circuit against Section 16, Township 54 South, Range 38 East, which resulted in the final decree, sought to be cancelled in this proceeding, was not a suit against the State.

The demurrers admit the allegations of the bill that the lands were granted to the State by the Act of Congress March 3, 1845, for school purposes, and that the State had not parted with the title to the property.

The bill of complaint, by sufficient allegation, sets forth that the suit for the enforcement of the drainage tax lien, which resulted in the alleged invalid final decree, was filed under the provisions of Section 20, Chapter 7599, and that such section of the law was, in so far as the property in question was concerned, invalid, because it was a suit against the State, and that the State could not be sued, without its consent given by general law, and that therefore such final decree was null and void.

Section 20, Chapter 7599, clearly contemplates that the owner of the land, and others interested therein, shall become parties to the suit for foreclosure of the drainage tax lien. The notice to the owner and all parties interested, provided for in said section, calls upon the owner, and any others interested, to make defense, if any they have. It

is true that no personal judgment is authorized under this section, but the property rights of the owner is involved, making the owner, or others interested necessary parties.

In the case of the City of Mount Vernon v. People, 147 Ill. 358, 35 N. E. Rep. 533, 23 L. R. A. 807, the Supreme Court of Illinois was considering a case in which it was sought to confirm a special assessment for street paving purposes, assessed against certain abutting property owned by the State. Under the Constitution of Illinois, the State could not be made defendant in any court of law or equity. It was contended in that case that the suit was an action *in rem,* and therefore the State was not a party defendant. In passing upon this contention, the Illinois Court said (text, 23 L. R. A. 811): "But there is another provision of the Constitution which, as it seems to us, is conclusive of the matter. Section 26-Article 4 of that instrument is as follows, 'The State of Illinois shall never be made defendant in any court of law or equity.' It is claimed by the appellant that the State is not a party defendant within the meaning of Section 26, upon the alleged ground that this is a proceeding *in rem*—an action to confirm a special tax directly upon or against real estate. It cannot be denied that county courts are included in 'any court of law or equity.' The statute requires that notice of assessment shall be sent by mail to the owner of the property, and that the notice shall be posted and published. Proof must be made of the mailing, posting and publication of such notice. The owner has a right to appear in response to the notice and file objections to the report of the Commissioners. A hearing is had and evidence is introduced. Although no judgment *in personam* is rendered against the owner, yet is cannot be said that he is not a defendant, in view of the provisions made for his notification, appearance and contest against the confirmation of the assessment. *We think, that when the State is thus called into county courts to*

*defend a proceeding against its property it is made a defendant in accordance with the constitutional prohibition.''* (Italics supplied.)

We hold that a proceeding brought against lands owned by the State for school purposes in the Southern Drainage District of Florida, under Section 20, Chapter 7599, Laws of Florida, Special Acts of the Legislature of Florida, 1917, was an action or suit against the State, and that the bill of complaint in this case is not susceptible to the objection that its allegations failed to make it appear that the State was a party to the action in which final decree of foreclosure of drainage tax lien was entered against the property described therein.

We have held that the State of Florida cannot be sued without its consent. Bloxham v. F. C. & P. R. R. Co., 35 Fla. 625, 17 South. Rep. 902.

Under Section 22, Article 3 of the Constitution of Florida, the State gives its consent to be sued by *general* law.

''The immunity of the State from suit is absolute and unqualified, and the constitutional provision securing it is not to be so construed as to place the State within the process of the court,'' Hampton v. State Board of Education of Florida *et al.,* 90 Fla. 88, 105 South. Rep. 323.

Even if there were a provision in Chapter 7599, Laws of Florida, Special Acts, 1917, authorizing or consenting that the State be made a party defendant to a proceeding for the foreclosure of alleged tax liens upon real estate held by it for school purposes in Southern Drainage District, such a provision would be invalid, because Chapter 7599 is a *special,* and not a *general* law.

There being no valid law giving the Southern Drainage District authority to sue the State for the foreclosure of alleged drainage tax lien upon real estate granted it by Congress for school purposes, or to make the State a party defendant to such a suit, the final decree of foreclosure of

the alleged drainage tax lien, on the property described in the bill of complaint, is null and void, as is also the tax deed executed by the Court Commissioner under and by virtue of said decree.

Section 20, Chapter 7599, Laws of Florida, Special Acts of the Legislature of Florida, 1917, in so far as it might be interpreted as authorizing a suit against real estate owned by the State, is null, void and of no effect, it being contrary to and in conflict with Section 22, Article 3 of the Constitution of Florida.

The final decree of foreclosure against the property described in the bill of complaint as being granted to and held by the State for school purposes, as also the tax deeds issued thereunder, are null and void.

Section 2 of Chapter 8906, Laws of Florida, Special Acts of 1921, cancelled and declared null and void all tax certificates and tax deeds issued under Chapter 7761, Laws of Florida, Special Acts of the Legislature, 1918, and Section 6 of Chapter 8906, *supra,* provided for the reimbursement by the Southern Drainage District of all owners or holders of such tax certificates or tax deeds. Therefore, all tax deeds complained of in the bill of complaint in this suit, that were issued under Chapter 7761, are null and void.

In the Court below the complainant, according to the allegations of the bill of complaint, contended that so much of Section 14 of Chapter 7599, *supra,* as provided for the levy and assessment of drainage tax upon the property granted to and held by the State for educational purposes, and also so much of Section 20 of the same chapter as might undertake to authorize the sale of such property for delinquent drainage tax on same, were null and void because in conflict with Sections 4 and 5 of Article 12 of the Constitution of Florida.

Section 14 of Chapter 7599 provides for the levy and

assessment of drainage tax on lands belonging to the State in the following language: ''All lands in said district belonging to the State shall be assessed ·to, and the taxes thereon shall be paid by the State out of funds on hand, or which may hereafter be obtained derived from the sale of lands belonging to the State or otherwise,'' etc.

It is alleged in the bill of complaint that the land described therein was, by the Act of Congress, March 3, 1845, granted to the State of Florida for school purposes, that the State of Florida had never parted with title thereto. These facts are admitted by the demurrers.

Section 4 of Article 12 of the Constitution of Florida, is in the following language, to-wit:

''The State School Fund, the interest of which shall be exclusively applied to the 'support and maintenance of public free schools, shall be derived from the following sources:

''The proceeds of all lands that have been or may hereafter be granted to the State by the United States for public school purposes.

''Donations to the State when the purpose is not specified.

''Appropriations by the State.

''The proceeds of escheated property or forfeitures.

''Twenty-five per cent of all sales of public lands, which are now or may hereafter be owned by the State.''

It is provided in Section 5 of said Article 12 of the Constitution of the State of Florida, that ''The principal of the State School Fund shall remain sacred and inviolate.''

Under Section 4, Article 12 of the Constitution quoted above, the proceeds from the sales of lands granted by the the United States to the State of Florida for school purposes becomes a part of the State School Fund, the principal of which remains inviolate, and the interest of which must be applied exclusively to the support and maintenance of public free schools.

The only provision made for divesting the State of its title to school land is found in Section 3798, Revised General Statutes, *supra.* When the title is thus divested, the proceeds thereof, under Section 4, Article 12 of the Constitution, shall go into the State School Fund.

Clearly, then, any law passed by the Legislature of Florida, seeking to authorize the collection of a tax upon or special assessment against real estate granted by Congress to and held by the State for school purposes, necessarily would require the expenditure of either the principal of the State School Fund, or the interest thereon, which is unauthorized under Section 4 and Section 5 of Article 12 of the Constitution of Florida. There is no other fund from which the tax or assessment can be paid. It is true, under Section 6 of Article 12 of the Constitution, there is a provision for the collection of a special tax of one mill on the dollar of taxable property, but this is to be used *"for the support and maintenance of public free schools."*

Section 7 of the same Article of the Constitution also precludes the State, or its authorities, from using school funds for payment of taxes. This section is as follows: ''Provision shall be made by law for the apportionment and distribution of the *interest* on the State School Fund, and all other means provided, including the special tax, *for the support and maintenance of public free schools among the several counties,''* etc.

It is contended by the appellants that the provisions of Sections 14 and 20 of Chapter 7599, Laws of Florida, have reference to *State lands,* and not the *State School Fund,* and that until the lands described in the bill of complaint have been sold and the proceeds placed in the State School Fund, the taxation and sale of the lands would not be inhibited by Sections 4 and 5 of Article 12 of the Constitution. If the theory of appellants were correct, the Legisla-

ture, in authorizing the assessment of a drainage tax upon the lands held by the State for school purposes, can withdraw the lands granted by and held by the State for school purposes from such purposes and appropriate them to another purpose, i. e., to assist in draining and improving a particular part of the legislative territory. It would amount to such transfer, because there can be no payment of the tax. There is no fund from which it can be paid, consequently, a sale of the land, under the provisions of Section 20, Chapter 7599, necessarily follows, and the *proceeds* thereof diverted, from the State School Fund.

The tax could not be paid from the Internal Improvement Funds. In the case of State *ex rel.* Kittel v. Trustees I. I. Fund, 47 Fla. 307, — South. Rep. —, we held that sixteenth sections granted by the Act of Congress of the United States of America, March 3, 1845, to the State of Florida, were not included in the swamp and overflowed lands, and that under Section 3, Article 12 of the Constitution of Florida, and laws in pursuance thereof, the said sixteenth sections of land passed under the exclusive control and disposition of the State Board of Education, an entirely different official body from that of the Trustees of the Internal Improvement Fund.

The Legislature of the State, by a subsequent enactment, recognized that the lands granted to, and held by the State for school purposes, could not be taxed for drainage, and it further recognized that there was a distinction between lands held and controlled by the State Board of Education and lands held and controlled by the Trustees of the Internal Improvement Fund. This is seen by reference to Chapter 8907, Laws of Florida, Special Acts of 1921, amending Chapter 7599, *supra.* Section 4 of Chapter 8907 amends Section 14 of Chapter 7599, relative to taxation of State lands, so that it reads as follows: ''The lands within said

District held by the Trustees of the Internal Improvement Fund shall be subject to the taxes hereby imposed, and that the said Trustees, in *furtherance of the trust upon which the said lands are held,* are hereby authorized and empowered to pay the same out of any funds in their possession derived from the sale of lands or otherwise,'' etc. (Italics supplied.)    There is nothing said about tax upon lands held by the State Board of Education.   Evidently the legislators recognized that to tax the school lands would be in contravention of the provisions of Sections 4 and 5 of the Constitution of the State.

The Supreme Court of Illinois, in the case of People *ex rel.* Little v. Trustees of School, etc., reported in 7 N. E. Reporter, page 262, said the following:   ''School lands donated by Congress to the State (Act of Congress, April 18, 1818, 1 Storr, &c., St. 521, par. 6) are exempt from liability for special assessments for improvements. this results from the guaranty by Section 2 of Article 8 of the Constitution of 1870 (1 Storr, &c., St. 141) that donations for school shall be faithfully applied to the objects of such gifts.''

In the case of State *ex rel.* Kittel v. Trustees, I. I. Fund, *supra,* we said that ''the Act of Congress of March 3, 1845, entitled, 'An Act supplementary to an Act for the admission of Florida and Iowa into the Union and other purposes,' granting school lands to Florida, was in the nature of a compact between the State and the United States Government.''

This grant designated the purpose for which it was granted under this compact, and to appropriate the land or its proceeds to other than school purposes would be unauthorized, even if the State of Florida had not protected it from such wrongful appropriation by constitutional restrictions.

The Supreme Court of Indiana, in its headnote to the

case of Edgerton *et al.* v. Huntington School Tp. *et al.*, reported in 126 Ind. 261, 26 N. E. Rep. 156, holds the following: ''Congressional township lands, in Indiana which, under Acts of Congress and provisions of the State Constitution, are appropriated to the support of common schools, and are not subject to taxation by the State, are not liable to assessment for the expenses of constructing public ditches, under Rev. St. Ind. 1881, Sec. 4305, although they may be benefited to an amount equal to the assesssment; it being the intent of the statutes relating to public ditches, that assessments should be made only against such lands as are subject to taxation.''

Sections 14 and 20 of Chapter 7599, Laws of Florida, Special Acts of the Legislature, 1917, in so far as they provide for assessing, levying and collecting by sale or otherwise, drainage tax upon lands granted by the Act of Congress March 3, 1845, to the State of Florida, for school purposes, are null, void and of no effect, they being contrary to and in conflict with Sections 4 and 5 of Article 12 of the Constitution of Florida. Therefore, the final decree of foreclosure of drainage tax liens, and the tax deeds for the property consequent upon the final decree, against the said property executed under the provisions of these sections of the law, are null, void and of no effect, and the Court below was correct in holding that the allegations of the bill in this particular were sufficient to withstand the demurrers.

After the passage of Chapter 8907, Laws of Florida, Special Act of the Legislature, 1921, amending Chapter 7599, there was no semblance of authority for the taxation of the lands described in the bill of complaint, and therefore any of the tax deeds, issued therefor after the provisions of Chapter 8907 became operative, were null and void, not only upon the constitutional grounds set forth above, but also because the law governing the assessment of

drainage tax in the Southern Drainage District made no provision for the taxation of said lands.

There was no merit in the contention of the respondents' demurrers, that the complainants had been guilty of laches. See Sec. 2927, Revised General Statutes of Florida, 16 Cyc., p. 151.

We have carefully considered the questions raised by the demurrers, and we fail to find any reversible error in the order of the Court below overruling the demurrers. Therefore, the interlocutory decree appealed from is affirmed.

ELLIS, C. J., AND WHITFIELD, STRUM AND BROWN, J. J., AND KOONCE, Circuit Judge, concur.

TERRELL AND BUFORD, J. J., disqualified.