No. 24921

The People of the State of Colorado, ex rel. Duke W. Dunbar, Attorney General of the State of Colorado, and The State Board of Land Commissioners of the State of Colorado v. City of Littleton, Colorado

(515 P.2d 1121)

Decided November 12, 1973.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, William Tucker, Assistant, for plaintiffs-appellants.

Alan L. Sternberg, Ralph C. Taylor, for defendant-appellee.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

This is an appeal from that portion of the judgment in the Arapahoe County District Court entered in favor of the City of Littleton and against the State of Colorado for the sum of $1,508 — the amount of a special assessment against school lands in a special improvement district within the city. The court in entering the judgment held that school lands were subject to the special assessment and also held that Littleton was entitled to a lien on the land which it could not foreclose or enforce, but entered a decree quieting title in the State Board of Land Commissioners. That part of the judgment was not appealed from.

The narrow issue presented in this court is whether land placed in perpetual public trust pursuant to Section 7 of the Colorado Enabling Act, and subject to the restrictions

imposed under Sections 3 and 5 of Article IX of the Colorado Constitution is subject to assessment in the special improvement district created by a municipality. (Although the precise question here deals with a home rule city, the principle would be the same whether such improvement district were by statute or by act of a county.)

By Section 7 of the Colorado Enabling Act, Congress set aside certain lands in each township of Colorado "for the support of the common schools." Section 5 of Article IX defines school funds as "the proceeds of such land as have heretofore been, or may hereafter, be granted to the state by the general government for educational purposes." Section 3 of Article IX establishes that these funds are inviolate, and can only be expended in the maintenance of Colorado's schools. Thus, the lands in this case can only be used for educational purposes, and the school fund can only be expended for support of the common schools. This obviously prohibits the use of school funds for the payment of taxes or a special assessment. *Southern Drainage Dist. v. State,* 93 Fla. 672, 112 So. 561 (1927); *People ex rel. Paschen v. Hendrickson-Pontiac, Inc.,* 9 Ill. 2d 250, 137 N.E.2d 381. (1956); *Chicago v. University of Chicago,* 302 Ill. 455, 134 N.E. 723 (1922); *People ex rel. Little v. Trustees of Schools of Township,* 118 Ill. 52, 7 N.E. 262 (1886); *Edgerton v. Huntington School Township,* 126 Ind. 261, 26 N.E. 156 (1890); *Lord v. Kosciusko,* 170 Miss. 169, 154 So. 346 (1934); *Washington County v. Riverside,* 159 Miss. 102, 131 So. 644 (1931); *Erickson v. Cass County,* 11 N.D. 494, 92 N.W. 841 (1902). *But cf. Toole County Irrig. Dist. v. State,* 104 Mont. 420, 67 P.2d 989 (1937).

The above cases have held that lands granted by the federal government to states for school purposes are exempt from special assessments upon one of three overlapping reasons, the essence of which is that enforcement of the assessments against either the land or its proceeds would be a diversion of school funds in violation of either:

(1) the act of Congress granting the land to the state for school purposes (this has been construed as a compact

between the state and the federal government, designating the purpose for which it was granted, and appropriation of the land or its proceeds to other than school purposes is unauthorized);

(2) state constitutional provisions, such as those in Colorado, making such land part of the state school fund and declaring that the principal must remain inviolate (this prevents the appropriation of the funds for any other purpose other than school purposes); and

(3) the fact that the state holds such lands in trust for the purpose of the grant, and state constitutional provisions declaring that all such land and the proceeds thereof shall be faithfully applied to the objects for which it was given prohibit its appropriation to state or municipal purposes, directly or indirectly.

We find the language by the Florida Supreme Court in *Southern Drainage Dist. v. State, supra,* particularly apropos: "* * * the proceeds from the sales of lands granted by the United States to the state of Florida for school purposes becomes a part of the state school fund, the principal of which remains inviolate, and the interest of which must be applied exclusively to the support and maintenance of public free schools.

"The only provision made for divesting the state of its title to school land is found in section 3798, Revised General Statutes, supra. When the title is thus divested, the proceeds thereof, under section 4, article 12, of the Constitution, shall go into the state school fund.

"Clearly, then, any law passed by the Legislature of Florida, seeking to authorize the collection of a tax upon or special assessment against real estate granted by Congress to and held by the state for school purposes, necessarily would require the expenditure of either the principal of the state school fund, or the interest thereon, which is unauthorized under * * * the Constitution of Florida. There is no other fund from which the tax or assessment can be paid. * * *"

█ Holding, as we do, that the land is not subject to assessment, neither the district nor the City of Littleton can

assert a lien against it, nor can there be a money judgment against the state — which holds the school land in trust for the specific purposes enumerated.

That part of the judgment against the State of Colorado for the amount of the assessment and granting a lien on the land is reversed.

MR. JUSTICE HODGES does not participate.