The CITY OF LITTLETON, Colorado, a home-rule municipal corporation of the State of Colorado, Plaintiff–Appellant,

v.

The STATE of Colorado; The Board of Land Commissioners of the Department of Natural Resources of the State of Colorado; and The State Board for Community Colleges and Occupational Education, Defendants–Appellees.

No. 90CA0388.

Colorado Court of Appeals,
Div. I.

Nov. 21, 1991.

Rehearing Denied Dec. 19, 1991.

Certiorari Granted June 29, 1992.

Larry W. Berkowitz, City Atty., and Barry A. Segal, Asst. City Atty., Littleton, for plaintiff-appellant.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., David F. Steinhoff, and Michael W. Schreiner, Asst. Attys. Gen., Denver, Colo., for defendants-appellees. State Bd. for Community Colleges and Occupational Educ. and Bd. of Land Com'rs.

Opinion by Judge SMITH.

Plaintiff, the City of Littleton (City), appeals the trial court's dismissal of its claim against the defendants, the State of Colorado, the Board of Land Commissioners, and the State Board for Community Colleges and Occupational Education, (the State) for $17,320.83 in unpaid storm drainage utility fees and penalties. The City also appeals that part of the judgment of dismissal awarding the State $10,462.50 in attorney fees. We affirm in part, reverse in part, and remand with directions.

The facts are not in dispute. The City passed an ordinance which imposed a storm water drainage fee (fee) on certain property owners within the City, including the State as owner of Arapahoe Community College and North Elementary School. The State refused to pay the fee, and the City filed this action to compel payment. In response, the State filed a motion to dismiss.

The trial court acknowledged the constitutional basis of the state entities in control of the above referenced school lands and concluded that express statutory authority was necessary for a municipality to subject the state to regulatory limitations. The trial court concluded there was no such authority in this instance. It further concluded that the fee imposed by the City was a special assessment and, thus, was additionally barred by the rule set forth in *People ex rel. Dunbar v. Littleton*, 183 Colo. 195, 515 P.2d 1121 (1973). Accordingly, the trial court dismissed the City's complaint and, without a hearing, awarded the State attorney fees.

## I.

The City contends that the trial court erred in dismissing its complaint. We disagree.

### A.

The City first argues that the trial court erred in ruling that the City had no express authority to impose and collect the fee.

The City relies on §§ 31–35–401 and 31–35–402, C.R.S. (1986 Repl.Vol. 12B) to support its argument. These statutory provisions authorize municipalities to "prescribe" and "collect" rates, fees, tolls, or charges for the services or use of municipal sewerage facilities including utilities employed in the treatment or disposition of storm drainage water. The provisions further state that such fees may be imposed on any "consumer," that is, any private or public user of such facilities.

The thrust of the City's argument is that the General Assembly, in broadly defining "consumer" to include "public user," clearly intended the State be subject to the fee established by the ordinance. We conclude that the City's statutory argument fails, however, inasmuch as it ignores the unique characteristics of the properties upon which the fee is prescribed.

Property comprising the Arapahoe Community College is, by constitutional mandate, under the exclusive control and direction of the institution's governing board, the State Board for Community Colleges and Occupational Education. *See* Colo. Const. art. VIII, § 5(2). And, by statutory mandate, funds entrusted to the Board are to be used "in the interests of ... *education* in this state." Section 23–60–104, C.R.S. (1988 Repl.Vol. 10B) (emphasis added).

North Elementary, on the other hand, comprises land granted to Colorado by the federal government to provide income for public schools. Colorado Enabling Act § 7. By virtue of Colo. Const. art. IX, §§ 3, 5, & 10, this land and the proceeds associated therewith are managed by the State Land Board exclusively to support the common

**988**

schools. *See also People ex rel. Dunbar, supra.*

■ Because of the constitutional underpinnings of these Boards and their constitutionally and statutorily conferred duties and powers any laws and regulations which would operate in contravention thereof must necessarily evidence a "clear and unmistakable" intent on the part of General Assembly to repeal the conflicting special statutory and constitutional provisions. *See Colorado Civil Rights Commission v. University of Colorado,* 759 P.2d 726 (Colo.1988). Further, if, as here, the laws and regulations impact lands held by the State Land Board, the legislative scheme must neither create a body with authority equivalent to that vested in the Board nor create a situation which results in the diversion of revenues from the public school funds. *Colorado State Board of Land Commissioners v. Colorado Mined Land Reclamation Board,* 809 P.2d 974 (Colo.1991).

■ The statutory provisions relied on by the City simply do not meet the foregoing criteria. In § 31–35–401, the General Assembly, while defining "consumer" broadly, declined to extend that term to include the State and its various subdivisions. And, in instances in which the State has been made subject to legislative schemes, the applicability of the legislation to the State and its subdivisions has been express. *See* § 32–11–101, et seq., C.R.S. (Urban Drainage and Flood Control Act); § 24–34–301, et seq., C.R.S. (1988 Repl.Vol. 10A) (Civil Rights Commission). Thus, we conclude that §§ 31–35–401 and 31–35–402 do not evidence a "clear and unmistakable" legislative intent to repeal or modify the exclusive control of the State Board for Community Colleges and Occupational Education over the use of its funds for educational purposes.

Furthermore, § 31–35–402, if read to include the State and its subdivisions, while not creating a body with powers equal to the State Land Board, would clearly create a situation that would result in the diversion of public schools funds contrary to Colo. Const. art. IX, § 3. Hence, for this additional reason, we conclude that §§ 31–35–401 and 31–35–402 cannot be read to include the State and its subdivisions.

In sum, we hold that the trial court did not err in ruling that the City had no express authority to impose and collect the fee.

**B.**

The City next argues that the trial court erred in concluding that *People ex rel. Dunbar, supra,* was applicable to bar its claims.

*People ex rel. Dunbar* holds that lands granted by the federal government to the State for school purposes, such as the North Elementary property at issue here, are unequivocally exempt from special assessments. The basis for the exemption is that such assessments against the land or its proceeds would be a diversion of school funds in violation of any one of the following:

(1) the act of Congress granting the land to the State for school purposes ...

(2) state constitutional such provisions, such as those in Colorado, making such land part of the state school fund and declaring that the principal must remain inviolate ... and

(3) the fact that the state holds such lands in trust for the purpose of the grant, and the state constitutional provisions declaring that all such land and the proceeds thereof shall be faithfully applied to the objects for which it was given ....

■ We conclude that although lands held by state institutions of higher education do not represent a grant between the federal government and the State, they are, nonetheless, under Colo. Const. art. VIII, § 5(2), lands held in trust by the institutions for educational purposes and that all proceeds therefrom are to be "faithfully applied" to promote such purposes. Hence, we hold that the exemption from special assessments announced in *People ex rel. Dunbar* is equally applicable to the lands and proceeds of lands held by state institutions of higher education and,

thus, the State Board for Community Colleges and Occupational Education. As such, if the fee at issue here is, indeed, a special assessment, the trial court properly determined that *People ex rel. Dunbar* precluded the City's attempt to recover the unpaid amounts assessed against both properties of the State.

The City's ordinance provides in relevant part:

7–8–5: Storm Water and Flood Management Utility: (A) There is hereby created a utility in the Department of Public Services under the control of the City Manager, empowered to implement the provisions of this Chapter. (B) The owner of each parcel of land in the City shall pay the fee prescribed in Section 7–8–8 herein for the construction, operation, maintenance, and replacement of the public Storm Water and Flood Management System and its facilities.

7–8–6: Use of Fees: (A) The utility shall hold all funds received by the City under this Chapter in a separate account and make expenditures thereof only for the purpose of: 1. Administration, engineering, construction, installation, repair, maintenance, improvement, replacement, and reconstruction of facilities in the City necessary to reasonably handle storm waters and floods in the City; and (2). The purchase of interests in real property, including without limitation fee simple ownership and easements, in land that may be necessary to construct facilities and otherwise implement the purposes of this Chapter.

Special fees and special assessments represent two of the revenue measures which are available to municipalities to raise funds for the City's public functions. A special fee is characterized as "a charge imposed upon persons or property for the purpose of defraying the cost of a particular governmental *service.*" *Bloom v. City of Fort Collins,* 784 P.2d 304 (Colo.1989) (emphasis added). A special assessment, unlike a special fee, is a charge imposed upon the users of a *local improvement* to finance the maintenance, operation, or development of the improvement. *Zelinger*

*v. City & County of Denver,* 724 P.2d 1356 (Colo.1986). As noted by the court in *Bloom, supra:* "The essential characteristic of a special assessment is that it must confer some special benefit to the property assessed."

Viewing the City's ordinance in light of the foregoing, we conclude that the trial court properly characterized the "fee" as a special assessment. By its own terms, the fee is to be used for "construction, operation, and maintenance" of storm water and flood management drainage facilities and systems. Indeed, the use of the collected funds, as described in § 7–8–6, clearly differs from the use of funds in *Bloom, supra,* where an ordinance intended to defray the expenses connected with the operation and maintenance of city streets was characterized as a fee and not a special assessment. There, unlike here, services, rather than physical improvements, was the focus of the ordinance.

Moreover, the construction and operation of the storm water facilities and drainage systems will confer not simply "services" upon the affected properties but rather a "special benefit" at least equal to the financial burden imposed by the City's ordinance.

Accordingly, we perceive no error in the trial court's ruling that fees charged under Littleton's ordinance were special assessments and that, therefore, under the rule of *People ex rel. Dunbar, supra,* such fees could not be assessed against respondents.

## II.

Next, the City contends that the trial court erred in its award of attorney fees to the State. We agree in part.

### A.

First, the City argues that the trial court erred in finding its claims lack substantial justification in accordance with § 13–17–102(4), C.R.S. (1987 Repl.Vol. 6A). We disagree.

The determination whether bringing and maintaining an action is frivolous and/or groundless under § 13–17–102(4) is a question for the trial court. That deter-

mination will not be disturbed if supported by the record. *Schoonover v. Hedlund Abstract Co.,* 727 P.2d 408 (Colo.App.1986).

Here, noting that the constitution, statutes, and caselaw clearly established that the City's claims lacked "any legal foundation," the trial court found that the City had not advanced a good faith argument, that the City had advanced the same arguments in *People ex rel. Dunbar, supra,* and that they had been rejected there. Accordingly, it concluded that the City's claim lacked substantial justification.

The trial court's detailed findings establish that it considered the factors set forth in § 13–17–102 and 13–17–103, C.R.S. (1987 Repl.Vol. 6A) in reaching its conclusion. Hence, we perceive no error in the court's finding.

### B.

We do, however, agree with the City's contention that the trial court erred in determining the proper amount of attorney fees without a hearing.

If a party disputes the amount of a claim for attorney fees that party is entitled to a hearing on the claim. *Zarlengo v. Farrer,* 683 P.2d 1208 (Colo.App.1984).

Here, the record discloses that, in responding to the State's motion to amend the trial court's findings and judgment which resulted in an award of attorney fees to the State, the City did, indeed, request an evidentiary hearing to determine the reasonableness of the fees. Accordingly, we conclude that the City placed the reasonableness of the attorney fee award in issue and, thus, is entitled to a hearing as requested.

That part of the judgment dismissing the City's claims is affirmed. That part of the judgment awarding the State $10,462.50 in attorney fees is reversed, and the cause is remanded for further proceedings consistent with this opinion.

PIERCE and DAVIDSON, JJ., concur.