396 P.2d 628

**MURRAY CITY, a municipal corporation of the State of Utah, Plaintiff and Respondent,**

v.

**BOARD OF EDUCATION OF MURRAY CITY SCHOOL DISTRICT, a municipal corporation of the State of Utah, Defendant and Appellant.**

No. 10060.

Supreme Court of Utah.

Nov. 16, 1964.

**116**

Richard C. Howe, Murray, for appellant.

Dansie, Ellett & Hammill, Murray, for respondent.

McDONOUGH, Justice.

The Board of Education of Murray City School District appeals from a judgment permitting the imposition of a "sewer service charge" accumulating monthly and based upon the number of pupils attending school within the district. It contends that the service charge is in reality an exercise of taxing power from which it is immune under the Constitution of Utah [1] and pertinent

---

1. Const. of Utah, Art. XIII, Sec. 2: " * * * The property of the state, counties, cities, towns, school districts, municipal corporations and public libraries, lots with the buildings thereon used exclusively for either religious wor-

statutes.[2] The City of Murray, on the other hand, urges, and was successful in convincing the trial court, that the "service charge" was a commercial transaction for services rendered and not a tax or assessment from which school districts are exempt.

The stipulated facts show that on September 5, 1952, the electors of Murray City authorized issuance of $1,300,000 water and sewer revenue bonds to provide for extensions and improvements to the city's water plant and sewer system. The sewer system was thereafter expanded to serve most of the city's dwellings and commercial buildings and a sewage treatment plant was constructed.

Connection to the sewer was by city ordinance made mandatory upon most buildings located within 200 feet of the sewer line, and charges were levied in accordance with the anticipated use of the facility by occupants. The service charges and connection fees collected by the city are placed in a separate fund and used for the payment of operation and maintenance costs and for payment on the revenue bonds. In recent years, the balance remaining after cost expenditures has been used to finance capital improvements to the system, but in former years the balance at the end of the year has been transferred to the general fund of the city.

The appellant Board of Education has connected to the sewer system 10 school buildings and one administrative building, paying the charges levied until about November 8, 1960.

On that date, the Attorney General for the State of Utah ruled in an opinion that the State of Utah was not obligated to pay fees for connecting a state-owned building to a municipal sewer system. On the basis of this opinion, the appellant has since refused to pay any further charges, at present amounting to $8,593.25 in delinquency.

In an opinion dated March 12, 1962, the Attorney General reversed the former ruling, holding that sewer assessments were not in fact a tax but instead a charge for services which the legislature has permitted water and sewage districts to impose.[3]

ship or charitable purposes, and places of burial * * * shall be exempt from taxation. * * * "

2. U.C.A.1953, 59–2–1: "The property of the United States, of this state, counties, cities, towns, school districts, municipal corporations and public libraries, lots with the buildings thereon used exclusively for either religious worship or charitable purposes, and places of burial * * * shall be exempt from taxation. * * * "

U.C.A.1953, 53–4–12: "All property real and personal held by any board of education shall be exempt from general and special taxation, and from all local assessments for any purpose, and no such property shall be taken in any manner for debt."

3. U.C.A.1953, 17–6–3.8: "Without in any way limiting the powers hereinabove reposed in districts created under this act, it is expressly provided that each such district shall have:

Appellant urges that the case of State ex rel. Board of Education of Salt Lake City v. McGonagle, 38 Utah 277, 112 P. 401 (1910) must control the decision and compel a reversal in the present case. In McGonagle, an assessment was levied by the city against land abutting the street designated for the laying of a sewer and it was there held that the assessment was unenforceable against property owned by the Board of Education. See also Wey v. Salt Lake City, 35 Utah 504, 101 P. 381 (1909).

Higher standards of sanitation have, since the time of the McGonagle decision, resulted in the need for a continuing income for the operation of a sewer system and a single assessment against land served by the facility for the laying of pipe no longer suffices. Charges for the service are now customarily made on a monthly basis. But despite the differences in the type of benefit received and the method of financing the project, appellant finds comfort in the following language from the McGonagle case, 38 Utah at 280, 112 P. at 402:

"It, however, is urged, that though the property was exempt and the assessment invalid, still, the city being the

"(a) Power and authority to exercise all powers of eminent domain possessed by counties in Utah, which powers shall be exercised in the manner provided for the exercise of such powers by counties.

"(b) The *power-to-cause to be levied as above provided, taxes* on all taxable property in the district for the carrying out of the purposes for which the district is created; provided, however, that the taxes so levied for any district shall not in any year exceed 4 mills on each dollar of valuation of taxable property in the district.

"(c) The power to enter into such contracts as are considered desirable by the board to carry out the functions of the district, including specifically *the power to enter into contracts with* municipal corporations, or other *public corporations*, or districts, and any county, any municipal corporation, or any other public corporation or districts, shall have the power to enter into contracts with districts created under this act for the purpose of constructing, acquiring or operating all or any part of a system for the collection, treatment and disposition of sewage; or private persons or corporations for the purchase of water from such persons or corporations public or private, or districts, or for the sale of water to such persons or corporations or districts, or for the use of any of the facilities of such persons, corporations or districts as may seem desirable to the board of trustees. The district shall have authority to make such payments for the use of any such water or facilities as the board of trustees may deem proper and *the district shall have authority to make such charges of* the persons, districts, or *corporations* as the board of trustees may deem proper.

"(d) *The power to impose and collect charges or fees for water or other services or facilities* afforded by the district to its consumers and to pledge all or any part of the revenues so derived to the payment of any bonds of the district, whether such bonds be issued as revenue bonds or as general obligations of the district. Where revenue bonds are issued as hereinabove authorized payable solely from the revenues of such facilities, the fees and charges so imposed shall always be sufficient to carry out the provisions of the resolution authorizing the bonds. The board may do such things and adopt such resolutions as may be necessary to assure the collection and enforcement of all fees and charges so imposed." (Emphasis added.)

owner of the sewer, could lawfully impose the payment of a reasonable charge before it was required to permit the board to connect with or use the sewer, and that the payment of $98, the amount of the assessment, by the board for the use of the sewer was a reasonable charge. The Legislature has seen fit to exempt all property of the board, both real and personal, from special taxation and all local assessments, for any purpose. Since the property was not subject to the assessment, and the levy for that reason invalid and the assessment unenforceable, to then permit the municipality to impose as a condition of tapping and making a connection with the public sewer the payment of a charge for the use of the sewer, is to allow the municipality, to do indirectly what it cannot do directly. * * * "

In that case, however, the school board recognized its responsibility for the cost of connecting its property to the sewer line and resisted only the payment of the special assessment. No service charge was imposed.

■■ An assessment within the meaning of U.C.A.1953, 53–4–12 is levied under the taxing power and is imposed upon property within a limited area for an improvement to enhance all property within that area, Northwestern Mutual Life Ins. Co. v. State Bd. of Equalization, 73 Cal.App.2d 548, 166 P.2d 917, 919. On the other hand, the cost of a service is determined by the benefits conferred upon the occupants of the land rather than an increase in value to the land itself. Thus, the paving of an abutting street, Wey v. Salt Lake City, supra, or the laying of sewer pipe, McGonagle, supra, benefit the property and are proper bases for levying a local assessment. But the benefits resulting from the sale of water expend themselves upon the users thereof and cannot be attached to the value of the land beyond permanent installation of pipes. A similar arrangement for the disposal of sewage has been sanctioned by the legislature, U.C.A.1953, Title 17, Chapter 6.[4]

■ Appellant contends, however, that certain aspects of the power to enforce connection and collect the fees charged exercised by Murray City deny the school board its consensual rights fundamental to contract and hence label the charges an exercise of the taxing power.

Murray City acts in two capacities—as a second-class city with the power to compel

---

4. Recent authorities in other jurisdictions generally regard a charge by a sewage authority as a use or service charge rather than an assessment or tax. See Jersey City Sewerage Authority v. Housing Authority, 70 N.J.Super. 576, 176 A. 2d 44, affd. 40 N.J. 145, 190 A.2d 870; City of Maryville v. Cushman, 363 Mo. 87, 249 S.W.2d 347; 64 C.J.S. Municipal Corporations § 1805 and cases cited therein.

compliance with its ordinances for the general health and welfare and as an improvement district for water and sewage systems, a separate arm of government.[5] It can require connection to the sewer to protect the health of its citizens as a functioning municipality and it can impose charges for sewage treatment and disposal as a sewage district, 17 U.C.A.1953, 17–6–22, 17–6–3.8.[6]

■ U.C.A.1953, 17–6–3.6 provides inter alia:

"* * * delinquent charges, together with interest and penalties, shall immediately upon such certification become a lien on the delinquent premises on a parity with and collectible at the same time and in the same manner as general county taxes are a lien on such premises and are collectible. All methods of enforcement available for the collection of such general county taxes, including sale of the delinquent premises, shall be available and shall be used in the collection of the delinquent sewer charges."

Appellant cites the language of U.C.A. 1953, 53–4–12, footnote 2, supra, protecting the property of the board of education from being taken in any manner for debt. We agree that there appears to be a conflict between the statutes when applied to the property held by a board of education, but the facts presenting such a conflict are not before us. The interjection of such an issue does not further the resolution of the question of whether the charges levied are to be typified as taxes, for the property of the board is protected from legal action for debt regardless. As to whether or not the lien provision as generally applied affects the conclusion, it is stated in Freeman v. Stewart, 2 Utah 2d 319, 273 P.2d 174, at 179:

"* * * it seems clear that the Legislature in speaking of both general obligation bonds to be supported by a tax, and revenue bonds to be paid from revenues, and having done so, provided for the collection of revenues by means of the lien procedure herein described, clearly did not intend that such method of collection would have the effect of changing the character of the revenue bonds into general obligation bonds. The fundamental fact is that the service charges, however col-

5. Tygesen v. Magna Water Co., 119 Utah 274, 226 P.2d 127. "The fact that an ordinance, providing for the establishment and operation of a municipal water and sewage system, may also contain regulations within the police power, is not conflicting, inconsistent, or an improper commingling of the two recognized functions of a municipality." Schmidt v. Village of Kimberly, 74 Idaho 48, 256 P.2d 515, 524.

6. Further, a municipality acts in a proprietary capacity rather than a governmental capacity when it operates a utility, Home Owners' Loan Corp. v. Logan City, 97 Utah 235, 92 P.2d 346.

lected, are but revenues derived from the operation of the district. The fact that the Legislature saw fit to provide an effective method of collection of delinquent charges does not change the character of the fees which are collected by this method, nor the nature of the bonds which are guaranteed by it."

 As in the Freeman case, no general obligation of the municipality is here involved. Murray City Ordinance No. 50 provides for a self-supporting utility, financed by revenue bonds. The conclusion must follow that the service charge and connection charge, neither of which is challenged as unreasonable, are not taxes or assessments but payments for service which the board of education has enjoyed.

The judgment of the trial court is affirmed.

CALLISTER, CROCKETT, and WADE, JJ., concur.

HENRIOD, Chief Justice (concurring).

I concur in the result, but not for some of the reasons stated in the main opinion, the implications of which may come back to haunt this court. This whole project was contractual and not taxual, and there seems to me to be no necessity to discuss the Constitution, any attorney general's opinions, higher standards of sanitation since the McGonagle decision, or much of anything else. Under the set-up here, the schools have a choice to contract for the service, for pay, or provide for their own sewage disposal under some other plan. It is obvious that in this case, if the school is more than 200 feet from the connection, it could not force anyone to furnish this service free of charge. I subscribed to the language of the main opinion, that "the service charge and connection charge, neither of which is challenged as unreasonable, are not taxes or assessments but payments for service which the board of education has enjoyed."