The CITY OF LITTLETON,
Colorado, Petitioner,

v.

The STATE of Colorado; the Board of Land Commissioners of the Department of Natural Resources of the State of Colorado; and the State Board for Community Colleges and Occupational Education, Respondents.

No. 92SC40.

Supreme Court of Colorado,
En Banc.

July 6, 1993.

Larry W. Berkowitz, City Atty., City of Littleton, Barry A. Segal, Littleton, for petitioner.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Patricia S. Bangert, Paul Farley, Deputy Attys. Gen., Antony B. Dyl, Jerry W. Goad, First Asst. Attys. Gen., David F. Steinhoff, Michael W. Schreiner, Asst. Attys. Gen., Denver, for respondents.

Charles H. Richardson, Jr., City Atty., City of Aurora, Michael J. Hyman, Aurora, for amicus curiae City of Aurora.

Steven J. Roy, City Atty., City of Fort Collins, W. Paul Eckman, Fort Collins, for amicus curiae City of Fort Collins.

Daniel E. Muse, City Atty., City and County of Denver, Steven J. Coon, Denver, for amicus curiae City and County of Denver.

Joseph N. de Raismes, III, City Atty., City of Boulder, Walter W. Fricke, Jr., Thomas M. Christensen, Boulder, Geoff Wilson, Gen. Counsel, Mun. League Kathleen E. Haddock, Denver, for amici curiae City of Boulder and Colorado Mun. League.

Justice KIRSHBAUM delivered the Opinion of the Court.

In *City of Littleton v. State of Colorado*, 832 P.2d 985 (Colo.App.1991), the Colorado Court of Appeals affirmed the trial court's judgment dismissing a civil action filed by the petitioner, the City of Littleton, Colorado (hereinafter the City), against the respondents, the State of Colorado, the Board of Land Commissioners of the Department of Natural Resources of the State of Colorado (hereinafter the State Land Board), and the State Board for Community Colleges and Occupational Education (hereinafter the State Community Colleges Board), to collect fees charged by the City pursuant to a municipal ordinance to the two respondent boards, and assessing attorney fees and costs against the City pursuant to section 13–17–102(4), 6A C.R.S. (1987).[1] The court of appeals concluded that sections 31–35–401 and –402, 12B C.R.S. (1986), did not grant the City authority to impose the fees against the respondents; that the fees constituted special assessments and therefore, pursuant to our decision in *People ex rel. Dunbar v. City of Littleton*, 183 Colo. 195, 515 P.2d 1121 (1973), could not be imposed upon the respondents; that the trial court properly assessed attorney fees against the City; and that because the trial court failed to conduct any evidentiary hearing before fixing the amount of the attorney fees awarded, the case must be remanded to that court for a determination of such sum. Having granted the City's petition for certiorari review of the court of appeals judgment, we reverse and remand with directions.

I

In the latter part of 1985, the City adopted a storm water and flood management utility ordinance (hereinafter the ordinance),[2] effective January 1, 1986, to pre-

---

1. Although the State of Colorado was a named defendant, its interests are co-extensive with those of the two boards. We therefore shall use the term "respondents" to refer to the two boards.

2. The ordinance contains the following pertinent provisions respecting the City's intent in adopting it:

    1. To promote public health, safety, and welfare by permitting the movement of emergency vehicles during flooding periods,

and minimizing flood losses and the inconvenience and damage resulting from uncontrolled and unplanned storm water runoff in the City;

    2. To establish Major Drainageway Master Plans for storm and flood waters, a flood management program and to provide for their implementation;

    3. To establish a Storm Water and Flood Management Utility and Fund to finance, coordinate, design, construct, manage, op-

vent damage to property from accumulations and uncontrolled run-offs of water. The ordinance declares that as the ultimate beneficiaries and users of the contemplated system, the owners of property within the City shall be required to pay a fee for the costs of constructing, operating, maintaining and replacing the system and its facilities.[3] Littleton, Colo.Mun.Code §§ 7-8-1(C), 7-8-5(B) (1985).

Section 7-8-6 of the ordinance provides for the use of the fees as follows:

(A) The [Storm Water and Flood Management Utility] shall hold all funds received by the City under this Chapter in a separate account and make expenditures thereof only for the purpose of:

1. Administration, engineering, construction, installation, repair, maintenance, improvement, replacement, and reconstruction of facilities in the City necessary to reasonably handle storm waters and floods in the City; and

2. The purchase of interests in real property, including without limitation fee simple ownership and easements, in land that may be necessary to construct facilities and otherwise implement the purposes of this Chapter.

(B) The City may pledge fees collected under this Chapter and those anticipated to be collected to the retirement of the principal and interest of revenue or general obligation bonds issued by the City for financing any of the activities set forth in Subsection (A) of this Section.

(C) The City may pledge fees collected under this Chapter and those anticipated to be collected to participate with the Urban Drainage and Flood Control District or other public entity or private party having a common interest in storm drainage projects or facilities.

Littleton, Colo.Mun.Code §§ 7-8-6(A)-(C) (1985). The amount of the fee is based upon such factors as the zoning, use, and state of development of the property subject to the fee. Littleton, Colo.Mun.Code § 7-8-8(A) (1985). The ordinance provides that the City shall periodically bill real property owners and that bills not paid within sixty days will be subject to a twenty-five percent surcharge. Littleton, Colo. Mun.Code § 7-8-7, -11(A) (1985). Fees and surcharges are deemed liens upon the subject property from the date the fees are due until they are paid, which liens may be enforced by the City against property owners by civil actions. Littleton, Colo.Mun. Code § 7-8-11(B) (1985).

In February 1986, pursuant to the ordinance, the City charged the State Community Colleges Board a fee totaling $2,139.47 for the first six months of 1986 based on the State Community Colleges Board's ownership of property utilized by the Arapahoe Community College. The State Community Colleges Board did not pay this fee. In late April 1986, the City charged the State Land Board a fee totaling $944 for the first six months of 1986 based on the State Land Board's assumed ownership of property used by an elementary school.[4] The State Land Board timely paid this fee.

The City subsequently charged the State Community Colleges Board additional fees

---

erate, and maintain the Storm Water and Flood Management System;

4. To establish reasonable storm water and flood management fees based on the use of the land located within the City; and

5. To encourage and facilitate reasonable urban water resources management techniques, including without limitation, detention of storm water and floods, reduction of the need to construct storm sewers, reduction of pollution and enhancement of the environment.

Littleton, Colo.Mun.Code § 7-8-1(B) 1-5 (1985).

3. Section 7-8-9 of the ordinance exempts public park land; public or private ponds, lakes, reservoirs, rivers, and creeks; natural water courses; irrigation ditch/canal rights-of-way; public or private streets, highways, rights-of-way, and alleys; certain railroad rights-of-way; and cemeteries from the fee. Littleton, Colo.Mun.Code §§ 7-8-9(A)-(E) (1985).

4. In its answer brief the State Land Board asserts that in 1948 it conveyed this property to the Arapahoe County School District No. 6. The question of the ownership of this property was not considered by the trial court or the court of appeals. The City's complaint having been dismissed on a motion filed pursuant to C.R.C.P. 12(b)(5), all factual allegations contained therein are deemed true. *Board of County Comm'rs v. City of Thornton,* 629 P.2d 605, 609 (Colo. 1981).

and penalties totaling $10,697.36 for the period from the last six months of 1986 through the first six months of 1988. The City charged the State Land Board additional fees and penalties totaling $4,484 for that period of time. The respondents have not paid these charges.

In February 1988, the City commenced the present action against the respondents and the State of Colorado seeking judgment for the unpaid fees and penalties, interest and attorney fees and requesting a mandatory injunction requiring the respondents to pay any future fees charged to them. In response, the respondents and the State of Colorado filed a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to C.R.C.P. 12(b)(5), asserting that the City had no authority to charge the fees to the respondents. On February 20, 1990, the trial court entered an order dismissing the City's claims with prejudice and awarding the respondents attorney fees pursuant to section 13–17–102, 6A C.R.S. (1987) and C.R.C.P. 11. The order contained no findings of fact or conclusions of law and did not specify the amount of the attorney fees. *See* C.R.C.P. 52.

The City appealed the trial court's judgment to the court of appeals. During the course of the appeal the case was remanded to the trial court for the entry of findings of fact and conclusions of law and for a determination of the amount of attorney fees to be awarded to the respondents.

On October 26, 1990, the trial court entered an amended order containing findings of fact and conclusions of law. The trial court found that the State of Colorado owns the elementary school site, which site is under the control and management of the State Land Board; and that the State Community Colleges Board owns the Arapahoe Community College site. The trial court concluded that the respondents exercised constitutionally based powers; that because of those powers the City was prohibited from charging fees to the respondents in the absence of express statutory authority; and that no such statutory authority exists. The trial court further concluded that the fees constituted special assessments pursuant to *People ex rel. Dunbar v. City of Littleton,* 183 Colo. 195, 515 P.2d 1121 (1973), and thus could not be charged to the State Land Board. The trial court also held that *People ex rel. Dunbar* precluded the City from collecting the fees from the State Community Colleges Board because such payments would constitute an unconstitutional diversion of funds dedicated to educational purposes. Deeming the City's claims to be without legal foundation and without other justification, the trial court awarded attorney fees to the respondents in the amounts requested pursuant to section 13–17–102(4), 6A C.R.S. (1987), and C.R.C.P. 11. No evidentiary hearing was held prior to the entry of this order.

The court of appeals affirmed in part, reversed in part, and remanded with directions. The court concluded that because no statute expressly authorizes the City to impose the fees against the respondents, the respondents were not obligated to pay the fees. The court of appeals also concluded that the fees constituted special assessments and therefore could not be charged to the respondents under the rationale of *People ex rel. Dunbar.* The court of appeals agreed with the trial court that the claims against the respondents lacked substantial justification, thus warranting the imposition of attorney fees against the City. However, concluding that the City was entitled to a hearing on the reasonableness of the attorney fees claimed by the respondents, the court of appeals reversed the trial court's award of fees and remanded the case to that court with directions to conduct an appropriate hearing to determine the amount of such attorney fees.

II

■ The City argues that the fee authorized by the ordinance is not a special assessment and that payment of the fee does not contravene constitutional limitations on the authority of the State Land Board to expend state funds. We agree.

In *People ex rel. Dunbar v. City of Littleton,* 183 Colo. 195, 198, 515 P.2d 1121, 1122 (1973), we held that land grant-

ed by the federal government to the State of Colorado for the support of common schools, or the proceeds thereof, could not be subjected to a special assessment for the costs of a special municipal improvement district. In our view, the fee charged by the City in this case is not a special assessment.

In *Bloom v. City of Fort Collins*, 784 P.2d 304 (Colo.1989), this court delineated factors to be considered in determining the nature of a charge imposed by a municipality against property owners within its jurisdiction. Distinguishing between *ad valorem* property taxes, excise taxes, special assessments, and special fees, we recognized that the essential characteristic of a special assessment is that it confers some special benefit to the subject property. *Id.* at 308. In this case, the services for which the fees were charged do not specially benefit the property allegedly owned by the State Land Board. Creating the capacity to remove excess water from property and prevent flooding are general services benefiting all property owners. While the performance of these services prevents diminution of the value of land, such services and the facilities necessary to the performance thereof do not directly enhance the value of the property allegedly owned by the State Land Board. We conclude, contrary to the view of the trial court and the court of appeals, that the fee authorized by the ordinance is not a special assessment.

The parties have not suggested that the challenged fee is an *ad valorem* or excise tax. On the basis of the record here provided, we conclude that the charge is a service fee. A service fee is a charge reasonably designed to meet overall costs of the service for which the fee is imposed. *Bloom*, 784 P.2d at 310. *See Loup–Miller Const. Co. v. City and County of Denver*, 676 P.2d 1170, 1174–75 (Colo.1984). While a portion of the fee billed by the City is used to defray costs of constructing and maintaining a drainage system, such costs are reasonably related and essential to the provision of the contemplated services.

■ We also noted in *People ex rel. Dunbar* that, pursuant to section 7 of the Colorado Enabling Act [5] and article IX, sections 3 and 5, of the Colorado Constitution,[6] proceeds from lands granted to Colorado by the federal government for school purposes can only be used for the maintenance of schools and may not be appropriated for state or municipal purposes. *People ex rel. Dunbar*, 183 Colo. at 197–98, 515 P.2d at 1121–22. Thus the use to which the money held in trust is put is an additional factor for consideration in determining whether the challenged fee may be charged against the State Land Board.[7]

In our view, payment by the State Land Board of the fees charged by the City constitutes an appropriate expenditure for

5. Section 7 of the Act provides in relevant part as follows:

The sections numbered sixteen and thirty-six in every township ... are hereby granted to said state for the support of common schools. Colorado Enabling Act, § 7, 1A C.R.S. (1980). The parties do not dispute that the land allegedly owned by the State Land Board was granted by the federal government to the State of Colorado for the support of common schools.

6. Article IX, section 3, states as follows:

The public school fund of the state shall forever remain inviolate and intact; the interest thereon, only, shall be expended in the maintenance of the schools of the state, and shall be distributed amongst the several counties and school districts of the state, in such manner as may be prescribed by law. No part of this fund, principal or interest, shall ever be transferred to any other fund, or used or appropriated, except as herein provided. The state treasurer shall be the custodian of this fund, and the same shall be securely and profitably invested as may be by law directed. The state shall supply all losses thereof that may in any manner occur. Colo. Const. art. IX, § 3.

Article IX, section 5, states as follows:

The public school fund of the state shall consist of the proceeds of such land as have heretofore been, or may hereafter, be granted to the state by the general government for educational purposes; all estates that may escheat to the state; also all other grants, gifts or devises that may be made to this state for educational purpose. Colo. Const. art. IX, § 5.

7. There is no suggestion here that the ordinance unconstitutionally undermines the authority of the State Land Board. *See Colorado State Bd. of Land Comm'rs v. Mined Land Reclamation Bd.*, 809 P.2d 974 (Colo.1991).

the maintenance and benefit of the property allegedly owned by the State Land Board. The services performed by the City are designed to prevent damage to property from excessive accumulations of water and from flooding. The fees charged pursuant to the ordinance do not constitute impermissible support of a municipal purpose, but rather constitute appropriate charges for services that benefit the property. The trial court and the court of appeals erred in concluding that our decision in *People ex rel. Dunbar* prohibited the City from charging the service fee authorized by the ordinance to the State Land Board.[8]

### III

■■■ The City argues that section 31–35–402(1)(f), 12B C.R.S. (1986), expressly authorizes the collection of the fees it charged to the State Community Colleges Board. We agree.

The State Community Colleges Board is the governing authority with respect to Colorado's community colleges, including the Arapahoe Community College. §§ 23–60–104(1)(b), –202(1), –205, 9 C.R.S. (1988). As such, the State Community Colleges Board has exclusive control and direction of all funds of and appropriations to it, "unless otherwise provided by law." Colo. Const. art. VIII, § 5(2).

Section 31–35–402(1)(f) contains the following pertinent provisions respecting the

authority of municipalities to collect fees for provision of services connected with water and sewerage facilities:

> To prescribe, revise, and collect in advance or otherwise, from any consumer or any owner or occupant of any real property connected therewith or receiving service therefrom, rates, fees, tolls, and charges or any combination thereof for the services furnished by, or the direct or indirect connection with, or the use of, or any commodity from such water facilities or sewerage facilities or both....

§ 31–35–402(1)(f), 12B C.R.S. (1986).[9] Our resolution of the question of whether this statutory language authorizes the City to collect the contested fees from the State Community Colleges Board is informed by prior cases construing the "unless otherwise provided by law" exception established by article VIII, section 5(2), of the Colorado Constitution.

In *Associated Students v. Regents of the University of Colorado*, 189 Colo. 482, 485, 543 P.2d 59, 61–62 (1975), we held that in the absence of express statutory language indicating a contrary legislative intent, a state institution maintains complete supervision and control of its operations and of expenditures associated with its constitutionally protected activities. We applied that standard to conclude that sections 24–6–401 and –402(1), 10 C.R.S. (1973),[10] of the

---

**8.** The court of appeals concluded that the rule in *People ex rel. Dunbar* was also applicable to the City's effort to collect the fee from the State Community Colleges Board. The land owned by the State Community Colleges Board, however, was not granted by the United States Government to the State of Colorado for the support of common schools. Although the court of appeals recognized this fact, it held that the rule was applicable to the State Community Colleges Board because the State Community Colleges Board in fact held land in trust for educational purposes and that all proceeds from the land were to be faithfully applied to promote those educational purposes. *City of Littleton v. State of Colorado,* 832 P.2d 985, 988–89 (Colo.App. 1991). We express no opinion as to the correctness of that determination. However, because we have concluded that the fees here disputed do not constitute special assessments, but rather are fees for services that benefit the school property, the rule in *People ex rel. Dunbar,* if

applicable, would not bar the City's claim against the State Community Colleges Board.

**9.** In *City of Arvada v. City and County of Denver,* 663 P.2d 611, 614 (Colo.1983), we noted that although some charges may not be specifically authorized by § 31–35–402(1)(f), they nonetheless may be within the general contemplation of the statute.

**10.** Section 24–6–401 contained the following language:

> It is declared to be the policy of this state that the formation of public policy is public business and may not be conducted in secret.

§ 24–6–401, 10 C.R.S. (1973).

> Section 24–6–402(1) contained the following language:

> (1) All meetings of two or more members of any board, committee, commission, or other policy-making or rule-making body of any

Open Meetings Law of the Colorado Sunshine Act of 1972 did not prohibit the Regents of the University of Colorado from excluding members of the public from their executive meetings. *Associated Students,* 189 Colo. at 485, 543 P.2d at 62. In so doing, we recognized the broad discretion granted to the Regents as a state governing board by Colorado Constitution article VIII, section 5(2), and applicable statutory provisions. *Id.* at 484–85, 543 P.2d at 61.

In *Uberoi v. University of Colorado,* 686 P.2d 785, 789 (Colo.1984), we held that the Colorado Open Records Act, §§ 24–72–201 to –206, 10 C.R.S. (1982 & 1983 Supp.), constitutes general rather than specific legislation and contains no clear expression of legislative intent that limited the authority of the University of Colorado to deny an employee professor's request to copy certain documents. The statute provides in general that public records must be available for inspection at reasonable times. §§ 24–72–201, –203(1), 10 C.R.S. (1982). The term "public records" is defined in relevant part as follows: "[A]ll writings made, maintained, or kept by the state or any agency, institution, or political subdivision thereof...." § 24–72–202(6), 10 C.R.S. (1982). We concluded that the statutory definition of the term "public records" did not expressly reflect a legislative intent to limit the broad constitutional and statutory authority of the University to deny the plaintiff's request to copy the documents.

We recently revisited this issue in *Colorado Civil Rights Commission v. Regents of the University of Colorado,* 759 P.2d 726, 733 (Colo.1988), wherein we held that the Colorado Civil Rights Commission had jurisdiction, by virtue of statutory provisions defining its authority, to hear a claim of employment discrimination asserted by an employee professor who was denied tenure. The organic statute creating the Commission grants it broad jurisdiction over claims against employers and defines an employer to include "the state of Colorado or any political subdivision, commission, department, institution, or school district thereof...." § 24–34–401(3), 10 C.R.S. (1982). We distinguished our decision in *Associated Students* on the basis that the provisions of the Open Meetings Law therein construed contain significant exceptions to what might otherwise be deemed broad language, while the language of the statute defining the sweeping jurisdiction of the Civil Rights Commission and delineating the role of that institution unequivocally evidences an intent to subject state institutions, including the Board of Regents of the University of Colorado, to the Commission's jurisdiction. *Colorado Civil Rights Comm'n,* 759 P.2d at 733. We also distinguished our decision in *Uberoi* on the grounds that the relevant portions of the Open Records Act contain qualifying language and the scope of that statute is relatively limited. *Id.* at 733–34.

The statutory scheme upon which the City relies in this case authorizes municipalities to collect fees "from any consumer or any owner or occupant of any real property" receiving services "furnished by, or the direct or indirect connection with, or the use of ... water facilities or sewerage facilities or both...." § 31–35–402(1)(f), 12B C.R.S. (1986).[11] The statute defines a "consumer" as "any public or private user of water facilities or sewerage facilities or both." § 31–35–401(1), 12B C.R.S. (1986).

state agency or authority or of the legislature at which any public business is discussed or at which any formal action is taken by such board, committee, commission, or other policy-making or rule-making body are declared to be public meetings open to the public at all times, except as may be otherwise provided in the constitution.

§ 24–6–402(1), 10 C.R.S. (1973).

**11.** The statute defines "sewerage facilities" as follows:

"Sewerage facilities" means any one or more of the various devices used in the collec-

tion, treatment, or disposition of sewage or industrial wastes of a liquid nature or storm, flood, or surface drainage waters, including all inlets; collection, drainage, or disposal lines; intercepting sewers; joint storm and sanitary sewers; sewage disposal plants; outfall sewers; all pumping, power, and other equipment and appurtenances; all extensions, improvements, remodeling, additions, and alterations thereof; and any and all rights or interests in such sewerage facilities.

§ 31–35–401(6), 12B C.R.S. (1986).

The inclusion of "public" as well as "private" users in the statutory definition of "consumer" expressly evidences a legislative intent to subject state institutions such as the State Community Colleges Board to the provisions of the statute. This specific language, coupled with the broad purposes of the statute to encourage the development of adequate municipal water and drainage systems, brings this case within the rationale of our decision in *Colorado Civil Rights Commission.* The absence of a specific reference to the State Community Colleges Board is immaterial in light of the clear and all-encompassing definition of those "consumers" subject to provisions of the statute. The purpose of the statute as well as the express language of section 31–35–401(1) would be rendered meaningless by a construction that exempted state institutions from its coverage. In our view, the General Assembly has by the adoption of sections 31–35–401(1) and –402(1)(f) clearly expressed its intent to subject the State Community Colleges Board to the fees charged by the City.[12]

### IV

We have concluded that the City's claims against the respondents are authorized by law and are not barred by our ruling in *People ex rel. Dunbar.* Based on contrary determinations, the trial court and the court of appeals held that the respondents were entitled to awards of attorney fees against the City pursuant to section 13–17–102(4), 6A C.R.S. (1987), and C.R.C.P. 11. Because the premise underlying the award of attorney fees in this case is incorrect, the conclusion is erroneous.

### V

The judgment of the court of appeals is reversed and the case is remanded to that court with directions to remand the case to the trial court for further proceedings consistent with this opinion.

---

**12.** The court of appeals concluded that in order to collect the fee against the State Land Board, the City needed express statutory authority. While the requirement of express statutory authority is necessary for the City to collect the fee against the State Community Colleges Board, that requirement may not be necessary for the City to collect the fee against the State Land Board. Although we state no opinion as to the correctness of the court of appeals decision, we note that even if express authority were necessary to assess the fee against the State Land Board, the General Assembly in enacting § 31–35–401(1)(f) has manifested an unequivocal intent to include the State Land Board within the term "consumer."